289 So.2d 150 (1974)
Randolph Roy LaBAUVE and Roy Prospere
v.
The LOUISIANA WILDLIFE AND FISHERIES COMMISSION.
No. 53664.
Supreme Court of Louisiana.
January 14, 1974.
Peter E. Duffy, Metairie, for defendants-appellants.
Joseph N. Marcal, III, New Orleans, for plaintiffs-appellees.
SUMMERS, Justice.
Randolph Roy LaBauve and Roy Prospere are commercial fishermen. They live in the Cocodrie settlement of Terrebonne Parish and earn their livelihood principally by trawling for fish and shrimp in the waters of Terrebonne Parish. Prospere possesses a license from the State of Louisiana allowing him to trawl with a "gill net", while LaBauve works with Prospere under the authority of the latter's license. Their investment in a boat, nets and equipment is estimated at $14,000.
By Act 583 of 1972, Section 420 was added to Title 56 of the Revised Statutes; it provides:
A. The use of gill nets south of the Intracoastal Canal in Terrebonne and Lafourche Parishes is hereby prohibited and any such nets found in use in these areas shall be confiscated and destroyed.
B. Except for the period from September 1 through March 31 following, the use of trammel nets and seines for saltwater fishing between the Intracoastal Canal and one-half mile seaward of the shoreline in Terrebonne and Lafourche Parishes is hereby prohibited. *151 It is specifically provided in this Section that menhaden vessels licensed by the State of Louisiana shall be allowed to purse seine for menhaden seaward but not nearer than five hundred feet of the shoreline.
C. Any person found guilty of violating any provision hereof shall be subject to a fine of not less than two hundred dollars or more than five hundred dollars or imprisonment of not less than thirty days or more than six months. As an additional penalty, the violator's net or nets shall be confiscated and his catch forfeited. The nets and catch shall be sold and the proceeds disposed of in accordance with the provisions of R.S. 56:386.
The provisions of this section shall be self operative and shall require no further legislative action.
After the enactment of the statute, on March 30, 1973, LaBauve and Prospere brought this action against the Louisiana Wildlife and Fisheries Commission to enjoin its enforcement. Based upon representations contained in plaintiffs' petition, the trial judge issued a temporary restraining order and ruled the Commission to show cause why it should not be maintained during the pendency of the proceedings. On the trial of the rule, the Commission filed an exception to the jurisdiction over the subject matter insofar as it seeks injunctive relief.
When the hearing was had on the rule, the exception, referred to as an exception of no right of action, was dismissed, the Act was declared unconstitutional, and the temporary restraining order was made permanent. This appeal followed.
Clearly the Act in question is criminal in nature, providing as it does for a fine or imprisonment and confiscation and forfeiture of the violator's nets and catch.
As a general rule the equity arm of civil courts is not empowered to prevent enforcement of such statutes by injunction. See Olan Mills v. City of Bogalusa, 225 La. 648, 73 So.2d 791 (1954) for a thorough discussion of the law. The authority to enforce criminal laws is vested in those tribunals created for that purpose. It is an authority to be exercised according to laws provided for the just administration of criminal proceedings. La.Const. art. I, ¶ 9, 10; La.Code Crim.Proc. art. 2.
Ever present as a basic precept of the judicial function is the elementary and fundamental proposition that the government of Louisiana is constituted as a tripartite system involving three coordinate branches or departments: the executive, legislative and judicial. La.Const. art. II, 1. Each branch to subserve the ends for which it is instituted must be separate, free and independent of the other. The judicial department, therefore, does not, except for most weighty or grave reasons, interfere in the adminsitration of the executive or legislative branches. La.Const. art. II, ¶ 2. Abuse of these fundamental tenets is more likely to arise by judicial usurpation of the executive or legislative functions. The design of government permits the judiciary to check the abuse of power by the executive or legislative branches. However, no provision of the organic law enables other departments to limit the authority of the judiciary. The sole limitation on the authority of the judiciary is the restraint its judges impose upon themselves.
In the case at bar the judicial authority is sought to be invoked to deny the executive the right to appear in a court of justice to prosecute as a crime a violation of law enacted by the Legislature.
These principles present the threshold question: Not whether the law is good or bad, constitutional or unconstitutional, but whether the executive or co-ordinate branch should be deprived of its inherent, constitutional and statutory right to demand the enforcement of this law in the ordinary course of a criminal judicial *152 proceeding. The proposition was plainly stated in Louisiana Oyster & Fish Co. v. Police Jury, 126 La. 522, 52 So. 685 (1910):
... the court is asked to say to the executive, "you cannot appeal to the forum which the Constitution has designated to enforce this law, but you must come here, a different forum, and show that this law was properly enacted and is constitutional; in the meanwhile, and pending this issue, you will have to remain, quiescent and not interfere in its violation."
In a proper exercise of judicial restraint and to limit the improper exercise of equity powers by the judiciary, this Court has established three conditions, all of which must be fulfilled before equity powers will be invoked to restrain the enforcement of criminal statutes. The complaining party must establish: 1) the clear invasion of a property right; 2) threatened irreparable injury; and 3) the manifest unconstitutionality of the statute whose enforcement is sought to be enjoined. West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665 (1968), and the cases cited therein.
Plaintiffs, the Commission argues, were possessed of no property rights recognized or secured by the Constitution or laws of this State. La.Const. art. I, ¶ 2. It follows, according to the Commission, that there was no proper basis to support the issuance of an injunction by the trial judge.
In Louisiana, according to the Commission, the ownership of fish is specifically vested in the State by statute, videlicet:
The ownership of all fish or the parts thereof, or their products, existing in the waters of the state is in the state in its sovereign capacity. They shall not be taken, sold, or had in possession, except as otherwise permitted herein, and the title of the state to all such fish even though taken in accordance with the provisions of this Sub-part, always remains in the state for the purpose of regulating and controlling the use and disposition thereof. (La.R.S. 56:312 & 56:352)
Prior to the foregoing enactment the principle was recognized in Alfred Oliver & Co. v. Board of Commissioners, 169 La. 438, 125 So. 441 (1929):
Plaintiff had no proprietary interest in the fish it was prevented from catching, which were those found in the waters, under the jurisdiction of the state, not held by private ownership. Those fish were the property of the state and not of plaintiff. Plaintiff had the privilege, granted by the state, of catching and disposing of them, under such regulations as the state made for the catching and disposal of fish, but the state had the right to interfere with the exercise of this privilege, as for instance, as was the case here, in the exercise of its police power, to save a populous city from innundation, or for any other cause that it deemed sufficient.
. . . . . .
As plaintiff had no proprietary interest in the fish which were at large in the waters, and no right to object to the state's interfering with the exercise of the fishing privilege granted, it has no right to complain and claim damages.
See also State v. Monteleone, 171 La. 437, 131 So. 291 (1931); Louisiana Oyster and Fish Co. v. Police Jury, Parish of Assumption, 126 La. 522, 52 So. 685 (1910).
The principle is recognized in decisions of the United States Supreme Court. In Lacoste v. Department of Conservation, 263 U.S. 545, 44 S.Ct. 186, 68 L.Ed. 437 (1924) that court said:
The wild animals within its borders are, so far as capable of ownership, owned by the state in its soverign capacity, for the common benefit of all of its people. Because of such ownership, *153 and in the exercise of its police power the state may regulate and control the taking, subsequent use and property rights that may be acquired therein.
In Banjavich v. Louisiana License Board for Marine Divers, 237 La. 467, 111 So.2d 505 (1959), the issue was clearly defined by the Court:
The Louisiana Oyster and Fish Company Case provides an excellent example of the distinction to be drawn (anent the invasion of a property right) between laws, which regulate the use of public or common things, as defined by Articles 453 and 450 of the Civil Code, and those having for their purpose the regulation of a lawful business. There, the police jury of Assumption Parish passed a penal ordinance making it an offense to fish with a seine of more than fifty feet in length. The plaintiff, claiming that the ordinance was ultra vires in that the power to control the use of the fresh waters of the State for commercial purposes had been vested in the commissioners for the protection of birds, game and fish by Act 278 of 1908 alleged that, unless its enforcement was restrained, great damage to its business and irreparable injury would be sustained. But the Court affirmed the trial judge's action in denying plaintiff an injunction and applied the general rule that a civil court cannot restrain the execution of a penal law. In reaching this conclusion, the court recognized that equity may interfere to protect property rights against vexatious criminal proceedings but stated that plaintiff had no proprietary right to fish commercially in the waters of the lakes of Assumption Parish.
The foregoing analysis highlights the distinction between the case at bar and West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665 (1968). The plaintiff in the West Case sought and obtained an injunction restraining execution of a town ordinance denying him the right to conduct a grocery store business on Sunday, clearly a property right. Here, however, plaintiffs are seeking an injunction to restrain execution of a law regulating the taking of fish in public waters in which they have no proprietary interest.
Plaintiffs claim that the restriction on the use of gill nets in the waters of Terrebonne and Lafourche Parishes makes their investment in boats and nets useless and that consequently this amounts to the invasion of a property right. It may be that the boat may not be used with gill nets in the designated waters; however, the statute does not prohibit the use of the boat in these waters for fishing without gill nets, or, for that matter, with gill nets in nearby or adjoining waters.
The prerequisites to the exercise of equity jurisdiction in this case not having been satisfied, we find that the equity powers of the trial court were improperly invoked. The proper forum for testing the constitutionality of the statute is by a motion to quash in a criminal prosecution if and when that occasion arises.
For the reasons assigned, the judgment of the trial court is reversed, the injunction is set aside and annulled, and plaintiffs' suit is dismissed at their cost.
SANDERS, C. J., concurs in the decree.
BARHAM, J., concurs in decree only.
TATE, J., concurs in the result, being of the opinion that the statute is constitutional.
DIXON, J., concurs.