483 So.2d 1127 (1986)
Melvin T. VANACOR
v.
DEPARTMENT OF WILDLIFE AND FISHERIES, State of Louisiana.
No. 85-CA-546.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 1986.
Joel T. Chaisson, II, Destrehan, for plaintiff-appellee.
Donald E. Puckett, Louisiana Dept. of Wildlife and Fisheries, Baton Rouge, for defendant-appellant.
Before BOWES, GRISBAUM and CURRAULT, JJ.
BOWES, Judge.
On October 18, 1984, plaintiff-appellee, Melvin T. Vanacor, a commercial fisherman and resident of St. Charles Parish, was cited for violating LSA R.S. 56:320, taking commercial fish with non-approved traps. One week later, on October 25, 1984, Mr. Vanacor filed suit against the State Department of Wildlife and Fisheries seeking to enjoin the Department from "enforcing R.S. 56:320 and R.S. 56:8(91) insofar as prohibiting the taking of catfish only by approved slat traps." The following day, *1128 October 26, 1984, a judge of the Twenty-Ninth Judicial District Court issued the requested temporary restraining order and, on December 14, 1984, this order was maintained in the form of a preliminary injunction. In granting the preliminary injunction, the trial judge stated:
The Rule is made absolute. The facts indicate that the Legislature, in it's statutory scheme of things, has taken the subject of catfish relative to their sizes, and has statutorily enacted in one part of the law a size limit, and in another statute has set up system of "slat" trap configurations.
The Legislature, then by legislative fiat, has suspended the first law, the formal law, but not the latter.
In the course of this particular events [sic], the fishermen are forced and faced with a law which says that you can catch any size of the catfish but the limit as to the size has been suspended. Even microscopic catfish, but you must use a "slat" on every level.
The Rule is made absolute in reference to the injunction that has been filed by Mr. Vanacor. The injunction is granted in that the Department of Wildlife and Fisheries of the State of Louisiana is hereby enjoined from enforcing this particular law, as it applies to fishermen in St. Charles Parish.
On June 24, 1985, following a trial on the merits of the case, the preliminary injunction was perpetuated in the form of a permanent injunction. The State Department of Wildlife and Fisheries then filed this appeal, assigning the following as errors:
I. The District Court erred in issuing an injunction of a criminal statute without all the legal requirements for same having been met.
II. The District Court erred in ruling that the removal of the species size limitation effectively amounted to an implied repeal by the Legislature of the gear specifications.
III. The District Court erred if its granting of the injunction was based upon the statutes in question being allegedly vague, overbroad, violative of equal protection or selectively enforced.
(The Court did not appear to base its decision on these issues but they have been briefed herein out of an abundance of caution.)
IV. The District Court erred in substituting its judgment for that of the legislature and thereby removing the one-inch space requirement from the slat trap statute.
Although LSA R.S. 56:326 establishes an eleven inch minimum length limit for channel or eel catfish, Act 273 of the 1984 Legislature authorized the Louisiana Wildlife and Fisheries Commission to suspend or reduce the legal size limit of channel catfish in those areas of the state where biological data indicated that a suspension or reduction in size limit would not be detrimental to the fish population. Pursuant to said Act, the Commission adopted a resolution suspending the minimum size length limit on channel catfish in the southeastern portion of the state, including St. Charles Parish, for a period of five years beginning January 1, 1985.
One legal means of taking catfish is by use of a device called a slat trap. LSA R.S. 56:8(91) which defines the specifications for slat traps includes a requirement that "at least one pair of slats spaced at least one inch apart from each other [be] on at least three sides of the trap...." That law was in effect before the size limit was suspended and remained in effect after the Commission suspended the minimum length requirement (the law remains on the books today).
Mr. Vanacor's citation which led to this suit was for using slat traps with less than one inch openings as required by R.S. 56:8(91). All the argument and controversy in this case distills down to one question: Can the Department of Wildlife and Fisheries continue to enforce the requirement of R.S. 56:8(91) mandating one inch spacing on the slats of slat traps after suspending the minimum size length on channel catfish?
*1129 At first glance, it would appear that plaintiff's argument, that if there is no minimum size limit then how can gear specifications which serve to limit size continue to be enforced, seems to be logical. However, testimony by the State's biologists and others established that, in order to protect the future propagation of the species, some method of regulation is necessary. The suspension of the minimum size limit with the retention on gear limitations was a convenient and economical way to regulate the taking of channel catfish. Testimony by Dudley Carver, Fisheries' research leader, showed that underlying his recommendation and the commission's decision for removal rather than reduction of the size limit was the fact that the one inch spacing on slat traps would continue to grade this species, thereby preventing detrimental impacts on population. This testimony was corroborated by Bennie Fontenot, chief of the Fish Division. Suspending the size limitation meant that any fish in possession of the fishermen was a legal fish; while retention of the regulation on the traps ensured that enough of the sexually-mature channel catfish could escape to propagate the species.
Article IX, Section 7, of the Louisiana Constitution of 1974 vests the control and supervision of the wildlife of the State, including all aquatic life, in the Louisiana Wildlife and Fisheries Commission, whose functions, duties and responsibilities shall be provided by law. R.S. 36:602(B) vests control and supervision of all wildlife of the state, including fish and all other aquatic life in the Department of Wildlife and Fisheries, which is mandated to execute the laws enacted for the control and supervision of programs relating to the management, protection, conservation and replenishment of wildlife, fish and aquatic life in the state. The Commission (in areas not preempted by the Legislature) or the Legislature may choose to regulate the management of a particular species through size limits, gear or equipment specifications and/or requirements, bag and/or possession limits, open and closed season restrictions, or in any other way they deem proper to conserve those natural resources of the state.
For example, R.S. 56:498, as amended by Act 586 of 1984, states in part: "B. The possession count on salt water white shrimp taken in either inside or outside waters of Louisiana shall average no more than one hundred specimens to the pound...." However, all shrimp are exempted from this requirement during the spring open season, and brown shrimp are exempted from November 15th to December 20th. Notwithstanding the exemption from the size limits during these periods, the gear and equipment size requirements and specifications remain in effect throughout the season. See R.S. 56:499. This is an example of the species being managed solely through gear and equipment size and restrictions.
In the present case, the trial judge enjoined the enforcement of two sections of Title 56 of the Louisiana Revised Statutes. Title 56 contains sanctions for violations of its sections and hence is criminal in nature:
Where a law or ordinance contains criminal sanctions, the showing required for injunctive relief against its enforcement is even more exacting.9 In this situation, the plaintiff must show not only that the statute or ordinance is manifestly unconstitutional and that he is threatened with irreparable injury, but also that his existing property rights will be destroyed by enforcement. Dobbins v. Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169 (1904); LaBauve v. Louisiana Wildlife & Fisheries Commission, 289 So.2d 150 (La.1974), New Orleans Baseball & Amusement Co. v. City of New Orleans, 118 La. 228, 42 So. 784 (1907). Where these criteria cannot be met, injunctive relief is not available; the injured party's proper recourse against prosecution under an allegedly invalid law is to move to quash the bill on the ground that the offense charged is not punishable under a valid statute. C.Cr.P. 532.
Plaquemines Parish Com'n. Council v. Perez, 379 So.2d 1373, 1383 (La.1980).
*1130 One of the cases cited by the Supreme Court in the Perez opinion, LaBauve v. Louisiana Wildlife & Fisheries Commission, supra, is almost directly on point with the instant case. In the LaBauve case, two commercial fisherman challenged a section of R.S. 56 which prohibited the use of "gill nets" in certain areas; an injunction was granted by a trial judge; and the Commission appealed his ruling. In setting aside the injunction and dismissing the fishermen's suit, Justice Summers, writing for the Supreme Court, stated:
Clearly the Act in question is criminal in nature, providing as it does for a fine or imprisonment and confiscation and forfeiture of the violator's nets and catch.
As a general rule the equity arm of civil courts is not empowered to prevent enforcement of such statutes by injunction. See Olan Mills v. City of Bogalusa, 225 La. 648, 73 So.2d 791 (1954) for a thorough discussion of the law. The authority to enforce criminal laws is vested in those tribunals created for that purpose. It is an authority to be exercised according to laws provided for the just administration of criminal proceedings. La.Const. art. I, ¶ 9, 10; La. Code Crim.Proc. art. 2. [...]
In a proper exercise of judicial restraint and to limit the improper exercise of equity powers by the judiciary, this Court has established three conditions, all of which must be fulfilled before equity powers will be invoked to restrain the enforcement of criminal statutes. The complaining party must establish: 1) the clear invasion of a property right; 2) threatened irreparable injury; and 3) the manifest unconstitutionality of the statute whose enforcement is sought to be enjoined. West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665 (1968), and the cases cited therein.
Plaintiffs, the Commission argues, were possessed of no property rights recognized or secured by the Constitution or laws of this State. La.Const. art. I, ¶ 2. It follows, according to the Commission, that there was no proper basis to support the issuance of an injunction by the trial judge.
In Louisiana, according to the Commission, the ownership of fish is specifically vested in the State by statute, videlicet:
The ownership of all fish or the parts thereof, or their products, existing in the waters of the state is in the state in its sovereign capacity. They shall not be taken, sold, or had in possession, except as otherwise permitted herein, and the title of the state to all such fish even though taken in accordance with the provisions of this Sub-part, always remains in the state for the purpose of regulating and controlling the use and disposition thereof. (La.R.S. 56:312 & 56:352)
Prior to the foregoing enactment the principle was recognized in Alfred Oliver & Co. v. Board of Commissioners, 169 La. 438, 125 So. 441 (1929):
Plaintiff had no proprietary interest in the fish it was prevented from catching, which were those found in the waters, under the jurisdiction of the state, not held by private ownership. Those fish were the property of the state and not of plaintiff. Plaintiff had the privilege, granted by the state, of catching and disposing of them, under such regulations as the state made for the catching and disposal of fish, but the state had the right to interfere with the exercise of this privilege, as for instance, as was the case here, in the exercise of its police power, to save a populous city from innundation, or for any other cause that it deemed sufficient.
. . . . . .
As plaintiff had no proprietary interest in the fish which were at large in the waters, and no right to object to the state's interfering with the exercise of the fishing privilege granted, it has no right to complain and claim damages.
See also State v. Monteleone, 171 La. 437, 131 So. 291 (1931); Louisiana Oyster and Fish Co. v. Police Jury, Parish *1131 of Assumption, 126 La. 522, 52 So. 685 (1910).
Applying the foregoing principles to the case at bar, we find it is abundantly clear that the plaintiff 1) possessed no property right since the fish he seeks to catch are the property of the state which he may only take at the pleasure of the state and under the limitations set forth by the state; 2) the plaintiff demonstrated no irreparable injury in that he would still be allowed to pursue his chosen occupation as a commercial fisherman with the only limitation being that he use legal traps or he is free to use one of several other approved methods of taking catfish not involving the use of slat traps; and 3) plaintiff failed to prove the statute in question is manifestly unconstitutional as the prohibited conduct and equipment is specifically defined and plaintiff and others so situated have an unfettered choice as to what type of equipment they care to use in pursuit of their occupation.
Accordingly, we find that the trial judge improperly invoked its equity powers in restraining the enforcement of the involved statutes. The judgment of the trial court is reversed, the injunction is set aside and annulled, and plaintiff's suit is dismissed at his costs. Each side is to bear his own costs of this appeal.
REVERSED, ANNULLED AND SET ASIDE, AND DISMISSED.