503 So.2d 99 (1987)
Marvin DEMPSTER and Alvin P. Cooper
v.
LOUIS EYMARD TOWING CO., INC., et al.
No. 86-CA-554.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1987.
Motion Denied; Writ Denied May 8, 1987.
Michael L. McAlpine, James E. Swinnen, Alan J. Yacoubian, New Orleans, for appellees.
Robert C. Evans, New Orleans, for appellant.
Before KLIEBERT, GRISBAUM and WICKER, JJ.
*100 WICKER, Judge.
This appeal arises from the granting of a partial summary judgment in favor of the defendants/appellees, Louis Eymard Towing Company, St. James Marine Services, Inc., Valley Line Co., Security Barge Line, Flowers Transportation Co., Inc., and United Fire & Casualty Company, and against plaintiffs/appellants, Marvin Dempster (Dempster) and Alvin P. Cooper (Cooper), dismissing plaintiffs/appellants' claim for loss of a fishing site and loss of economic benefits and use of said fishing site. From that judgment appellants appeal. We affirm.
Dempster and Cooper filed suit against appellees seeking damages inter alia from the loss of their fishing nets, the loss of the catch in those nets, and the loss of future profits from their fishing site as the result of an incident occurring on or about June 15, 1983. On that date a collision occurred on the Mississippi River between barges owned by the appellees. One damaged barge was recaptured and placed against the bank. Dempster and Cooper contend that they had been fishing for catfish in the Mississippi River for years. The hoop nets used by them were placed along the bottom of the river and anchored in place in order to entrap the catfish that wander downstream.
The area damaged by the barge was an area they alleged to have been using for many years. They aver that their productive fishing site has become foul with debris and that their nets no longer entrap catfish.
Appellants' claim for the loss of their nets still remains for adjudication. The seminal issue on appeal is whether appellants can recover economic damages sustained as a result of the loss of a fishing site when they do not have a proprietary interest in the fishing site.
Appellants specify as error their assertion that the trial court erred in granting the defendants'/appellees' motion for partial summary judgment as a matter of law.
On May 13, 1985 the trial judge rendered a judgment concluding that the petition stated a valid cause of action for the recovery of the damages alleged. However, on June 5, 1986 the trial judge granted appellees' partial motion for summary judgment dismissing appellants' demand for the loss of a fishing site and loss of economic benefits and use of said fishing site.
At the hearing on the motion the trial judge noted that in the period between May 13, 1985 and May 28, 1986, the date of the hearing, that Vanacor v. Department of Wildlife and Fisheries, 483 So.2d 1127 (La. App. 5th Cir.1986) had been decided. He interpreted Vanacor, supra as holding there was no proprietary interest in fish or fishing.
In Vanacor, supra we considered a suit filed by commercial fisherman against the State Department of Wildlife and Fisheries seeking to enjoin the Department from enforcing statutory fish trap regulations. In that context we held that the fishermen were not entitled to an injunction preventing the state from enforcing its regulations since they did not possess a property interest in the fish.
In forming our conclusion we relied on L.S.A.-R.S. 56:312 and 56:352[1] which provides that:

*101 "[t]he ownership of all fish or the parts thereof, or their products, existing in the waters of the state is in the state in its sovereign capacity. They shall not be taken, sold, or had in possession, except as otherwise permitted herein, and the title of the state to all such fish even though taken in accordance with the provisions of this Sub-part, always remains in the state for the purpose of regulating and controlling the use and disposition thereof. [Emphasis supplied]. (La.R.S. 56:312 & 56:352)." Vanacor, supra at 1130.
Moreover, we held that "[a]s plaintiff had no proprietary interest in the fish which were at large in the waters, and no right to object to the state's interfering with the exercise of the fishing privilege granted, it has no right to complain and claim damages." Id. at 1130.
Although Vanacor, supra dealt with the ability of the state to regulate fishing, we also find it applicable to the instant case which concerns the rights of a tortfeasor to recover damages for the future loss of fish insofar as holding that the appellants have no proprietary interest in the fish at large in the state waters.
Although our brothers in the Fourth Circuit have allowed oystermen to recover economic losses sustained in connection with damage to an oyster bed, Skansi v. Humble Oil and Refining Co., 176 So.2d 236 (La.App. 4th Cir.1965), the plaintiff in Skansi proved by a preponderance of the evidence that he owned the damaged oysters. A proprietary interest in oyster beds was also necessary in Jurisich v. Louisiana Southern Oil & Gas Co., 284 So.2d 173 (La.App. 4th Cir.1973) and Trosclair v. Superior Oil Company, 219 So.2d 278 (La. App. 1st Cir.1969).
Both appellant and appellee cite the Union Oil Company v. Oppen, 501 F.2d 558 (9th Cir.1974) case as allowing recovery under maritime law to commercial fishermen who suffer economic loss as the result of an oil spill which caused a diminution of aquatic life. The Oppen court found that oil spillers owed a duty to commercial fishermen based upon "the fact that the injury flows directly from the action of escaping oil on life in the sea.... the public's deep disapproval of injuries to the environment and the strong policy of preventing such injuries." 501 F.2d at 569. Therefore, Oppen is distinguishable from the instant case since there is no allegation that the defendants fell into the category of "oil spillers."
Appellants, however, argue that the alleged damage is tantamount to pollution since the defendants allegedly altered the environment by damaging the river bank so as to make fishing non-productive. We disagree as to their contention that the particular alleged injuries constitute injuries as the result of pollution.
Moreover, the general rule in maritime law is that "physical damage to a proprietary interest [is] a prerequisite to recovery for economic loss." State of Louisiana Ex. Rel. Guste v. M/V Testbank, 752 F.2d 1019 (5th Cir.1985) (en banc), cert. denied, ___ U.S. ___, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).
More recently our Louisiana Supreme Court has stated that:
the rule of law which prohibits negligent damage to property does not necessarily require that a party who negligently causes injury to property must be held legally responsible to all persons for all damages flowing in a `but for' sequence from the negligent conduct.
Rules of conduct are designed to protect some persons under some circumstances against some risks [citations omitted]. Policy considerations determine the reach of the rule. PPG Industries, Inc. v. *102 Bean Dredging, 447 So.2d 1058, 1061 (La.1984).
Thus, our rationale for affirming the trial court is based on three reasons; namely 1) appellants have no proprietary interest in the fishing site or in anticipated fish caught in the future; Vanacor, supra 2) appellants' fishing site was not damaged as a result of pollution, Testbank, supra and Union Oil, supra, and 3) our Louisiana Supreme Court has approved the denial of expanding recovery to "all persons for all damages flowing in a `but for' sequence from the negligent conduct." PPG Industries, Inc., supra at 1061.
AFFIRMED.
NOTES
[1] On the date of the alleged damage, L.S.A.-R.S. 56:312 and 56:352 were in effect. These provisions were repealed by Acts 1985, No. 876, Section 4, effective July 23, 1985. The pertinent substance of the former provisions is contained in L.S.A.-R.S. 56:3 which provides that:

[t]he ownership and title to all wild birds, and wild quadrupeds, fish, other aquatic life, the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico within the territory or jurisdiction of the state, including all oysters and other shellfish and parts thereof grown thereon, either naturally or cultivated, and all oysters in the shells after they are caught or taken therefrom, are and remain the property of the state, and shall be under the exclusive control of the Wildlife and Fisheries Commission except as provided in R.S. 56:4.
Wild birds, quadrupeds, fish, other aquatic life, and the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets bordering on or connecting with the Gulf of Mexico, within the territorial jurisdiction of the state, including all oysters and other shellfish and parts thereof grown thereon, either naturally or cultivated, and all oysters in the shells after they are caught or taken therefrom, shall not be taken, sold, or had in possession except as otherwise permitted in this Title; and the title of the state to all such wild birds, quadrupeds, fish, and other aquatic life, even though taken in accordance with the provisions of this Title, and the beds and bottoms of rivers, streams, bayous, lagoons, lakes, bays, sounds, and inlets always remains in the state for the purpose of regulating and controlling the use and disposition thereof.