11WEIMER, Judge,
concurring.[1]
I respectfully concur in the result reached by the majority, add these observations and assign additional reasons.
The concept of separation of powers provides that each branch of government has certain powers and duties. Elementary civics lessons teach that our system of government is divided into three branches — the executive branch which enforces the law, the legislative branch which enacts the law, and the judicial branch which interprets the law.
The Louisiana Constitution recognizes the concept of separation of powers:
The powers of government of the state are divided into three separate branches: legislative, executive, and judicial. La. Const, art. II, § 1.
Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others. La. Const, art. II, § 2.
The judicial power is vested in a supreme court, courts of appeal, district courts and other courts authorized by this Article. La. Const, art. V, § 1.
| ¡¡.Subsequent to the lodging of the appeal in this matter, two identical simple resolutions[2] were passed — one by the House of Representatives and the other by the Senate. These simple resolutions address the legislative intent relative to the statutory provisions at issue in this appeal — LSA-R.S. 33:2711(A)(2) and 33:2721.6.[3]
*152 At oral argument, counsel for the plaintiffs/appellants acknowledged these resolutions were enacted at the request of the plaintiffs and also acknowledged his firm consulted with those who prepared the resolutions. Plaintiffs’ counsel argued in supplemental brief that these simple resolutions “provide evidence of the Legislature’s intent when enacting LSA-R.S. 33:2711(A)(2) and LSA-R.S. 33:2721.6.”
Counsel for the Town of St. Gabriel asserted, at oral argument, the town had no knowledge the resolutions were being introduced and argued in brief the resolutions were “solicited by Appellants at the eleventh hour of the 1998 Legislature for the sole purpose of influencing the outcome of this litigation.”
The existence of these resolutions cannot be ignored and the impact of these resolutions on this court’s decision must be addressed.
In State Licensing Board of Contractors v. State Civil Service Commission, 110 So.2d 847 (La.App. 1 Cir.1959), affirmed, 240 La. 331, 123 So.2d 76 (1960), the court addressed a concurrent resolution, adopted by both chambers of the legislature in 1958, with full knowledge of pending litigation, declaring the legislative |3intent as to a 1956 Act. With Judge, later Justice, Albert Tate, Jr. as the author of the opinion, the court commented that the concurrent resolution was unconstitutional as an encroachment upon the constitutional power of the judiciary to construe and interpret existing legislation. The court specifically stated: “[I]t is not within the constitutional province of the legislature thuswise to construe earlier enactments involved in litigation.” Id. at 850.
The term “judicial power” used in Article V, § 1, of the Louisiana Constitution is not defined.[4] Clearly, judicial power includes the power to interpret the law. See Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803). See State v. Peart, 621 So.2d 780, 790 (La.1993), citing St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d 809, 822 (La.1992) (Dennis, J. concurring),' which stated by virtue of the courts’ constitutional position, the courts are the “final arbiter of the meaning of the state constitution and laws.” See also State, Department of Highways v. Constant, 359 So.2d 666, 671 (La.App. 1 Cir.1978), amended and affirmed on other grounds, 369 So.2d 699 (1979).
Allowing a simple resolution regarding legislative intent to influence pending litigation would establish a dangerous precedent. Should one who can influence the legislature to enact a resolution which favors his position prevail in on-going litigation? Enacting, resolutions to define the legislative intent is problematic. Should not legislation be written with sufficient clarity that citizens can manage their endeavors without resort to considering subsequent resolutions which advise what was intended?
The Civil Code provides that “[t]he sources of law are legislation and custom.” LSA-C.C. art. 1. “Legislation is the solemn expression of legislative will.” LSA-C.C. art. 2. When there is no rule for a particular situation to be derived from legislation or custom, a court is bound to proceed according to equity which means to resort to justice, reason, and prevailing usages. LSA-C.C. art. 4. The legislature has enacted Lprovisions which provide the courts with guidance in interpretation of laws. See Chapter 2 of Preliminary Title *153 of the Louisiana Civil Code titled “Interpretation of Laws” and Chapter 1 of Title 1 of the Revised Statutes titled “Interpretation of Revised Statutes.”
Louisiana Civil Code art. 9 states:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
Louisiana Revised Statutes 1:4 states:
When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
Thus, the legislative branch has enacted laws which provide 'that legislative intent should not be considered if the law is clear and unambiguous and does not lead to absurd consequences.
The courts should make every effort to apply the law as enacted. When appropriate, legislative intent should be considered. See LSA-C.C. art. 9 and LSA-R.S. 1:4. Certainly, a resolution enacted by the legislature regarding intent can be persuasive in the appropriate circumstances.[5] It is not the function of the judiciary to legislate.[6] Conversely, it is not the role of the legislature to pass resolutions which are | Bthen used to influence pending litigation.[7]
In sum, these simple resolutions, which by definition do not have the effect of law, were enacted at the request of those attempting to influence pending litigation and should not be considered. To consider these resolutions would offend the constitutional concept of separation of powers. To consider these resolutions would be unfair to all parties to this litigation.
As to the merits, in agreeing with the majority opinion, I am further influenced *154 by the fact La. Const, art. VI, § 29(A) provides a three percent cap on sales and use taxes. Section 29(B) allows exceeding the three percent tax cap provided there is legislative authorization and voter approval. Taxing statutes must be construed strictly against the taxing authority. Collector of Revenue v. Wells Fargo Leasing Corporation, 393 So.2d 1244, 1246 (La.1981). Because Section 29(A) provides a three percent cap, any enactment which exceeds the three percent cap should be strictly construed.

. I wish to acknowledge the paper titled "Erosion of Judicial Power?” by H. Alston Johnson, III, Adjunct Professor of Law, Louisiana State University, presented to the Louisiana Judicial College, June 4, 1997.

. A simple resolution is defined by the Senate Desk Handbook as expressing "the will of one house of the Legislature only. Does not require the Governor's signature and does not have the effect of law ."

. See Senate Resolution No. 42 of the 1998 Regular Session, adopted June 8, 1998, which states in part:

“THEREFORE, BE IT RESOLVED that the Senate of the Legislature of Louisiana hereby expresses that its intent in enacting R.S. 33:2711(A)(2) was that the rate of the sales and use tax authorized by the cited provision when combined with the rate of all other sales and use taxes, exclusive of state and law enforcement district sales and use taxes, levied and collected within any parish or municipality shall not exceed four percent unless authorized by special legislative enactment.

“BE IT FURTHER RESOLVED that this Resolution is not intended so as to affect any tax authorized by R.S. 33:2711(A)(2) which is conclusively presumed to be valid under Article VI, Section 29 of the Constitution of Louisiana.”

See also House Resolution No. 58 of the 1998 Regular Session, which was adopted June 8, 1998, and contains virtually the same language.
The official journals of the House of Representatives and the Senate indicate that on June 8, 1998, the rules were suspended and the resolutions were introduced and adopted. The House Resolution was reported enrolled and signed by the Speaker of the House on June 9, 1998. The Senate Resolution was reported enrolled and signed by the President of the Senate on June 10, 1998. The legislative session adjourned June 10, 1998.

. See Keith Werhan, Normalizing the Separation of Powers, 70 Tul. L.Rev. 2681, 2684 (1995-1996). Professor Werhan writes relative to the federal concept of separation of powers: “The constitutional text usually is indeterminate with respect to important separation-of-powers disputes. Notwithstanding (or perhaps because of) the multiple meanings of the separation-of-powers extant during the founding era, the Framers made no attempt to adopt a fixed, constitutional definition of the concept. Nor did they define the terms ‘executive,’ ’legislature,’ or ’judicial’ when vesting those powers in the three branches of the national government.’’

. See McNamara v. Central Marine Service, Inc., 507 So.2d 207, 210 (La.1987), where the court addressed a 1982 House Concurrent Resolution, passed by the Legislature, which indicated the intent of a 1959 Act. The court stated that while the resolution "is not controlling, for it is not for the Legislature to interpret or express an earlier Legislature’s intent, it is persuasive.”

. See LaBauve v. Louisiana Wildlife and Fisheries Commission, 289 So.2d 150, 151 (La.1974), wherein the court wrote: "Ever present as a basic precept of the judicial function is the elementary and fundamental proposition that the government of Louisiana is constituted as a tripartite system involving three coordinate branches or departments: the executive, legislative and judicial. Each branch to subserve the ends for which it is instituted must be separate, free and independent of the other. The judicial department, therefore, does not, except for most weighty or grave reasons, interfere in the administration of the executive or legislative branches. Abuse of these fundamental tenets is more likely to arise by judicial usurpation of the executive or legislative functions. The design of government permits the judiciary to check the abuse of power by the executive or legislative branches. However, no provision of the organic law enables other departments to limit the authority of the judiciary. The sole limitation on the authority of the judiciary is the restraint its judges impose upon themselves.” (Citations omitted.); See also Konrad v. Jefferson Parish Council, 520 So.2d 393, 397 (La.1988), where the court stated: "Because there is some inevitable overlap of the functions, each branch of government must strive to maintain the separation of powers by not encroaching upon the power of the others. Consequently, the inherent powers of the judiciary should be used sparingly and only to the extent necessary to insure judicial independence and integrity.” (Citation omitted.) See also State v. Rome, 96-0991, p. 3 (La.7/1/97), 696 So.2d 976, 978.

. State Licensing Board of Contractors v. State Civil Service Commission, supra; See also City of New Orleans v. Louisiana Mutual Insurance Company, 1874, 26 La. Ann. 499 stating: "To interpret laws is not within the powers of the General Assembly; it is not a legislative, but a judicial function.” See also Lanier v. Gallatas, 1858, 13 La.Ann. 175, 176, wherein the court encountered "a special act of the Legislature” purporting to impact a case pending before the Supreme Court. The court diplomatically stated the following:
The case had been submitted to us before the passage of the Act, and was beyond the legislative control. Our respect for the General Assembly and the Executive forbids the inference that they intended to instruct this court what to do or not to do, whilst passing upon the legal rights of parties in a special case already under advisement.