LOBRANO, J.,
DISSENTS AND ASSIGNS REASONS.
LI respectfully dissent from the majority’s opinion. Because expropriation laws *638 must be strictly construed against the expropriating authority,[1] and the Louisiana Constitution expressly prohibits the taking of a.business enterprise,[2] I find that the Port’s taking of VDP’s Property is clearly unconstitutional. Thus, I would remand this case to the district court for a return of title and determination of necessary compensation for the time the Port has possessed VDP’s Property as required by La. R.S. 19:160.
|gThe majority interprets La. Const, art. VI, § 21’s authorization allowing public ports to exercise eminent domain to be an unrestricted exception to La. Const. art. I, § 4’s protections from the unchecked use of eminent domain. This interpretation is fundamentally incorrect. La. Const. art. I, § 4 grants private property rights to every person subject to reasonable statutory restrictions and the reasonable exercise of the police power. See New Orleans Redevelopment Auth. v. Burgess, 2008-1020, p, 10 (La. App. 4 Cir. 7/8/09), 16 So.3d 569, 577. La. Const. art. VI, § 21 serves only to authorize public ports to exercise eminent domain to accomplish their, public purpose, “subject to restrictions it [the Legislature] may impose.” Nothing in La. Const, art. VI, § 21 grants public ports unfettered and unrestricted exercise of their eminent domain power.
This misreading appears to result from improperly applying La. Const. art. I, § 4(B)(1) to the business enterprise exception provided in (B)(6). La. Const. art. I, § 4(B)(1) reads as follows:
(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or. into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for prédominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity (emphasis added).
This provision prohibits the taking of property for predominant use by any private person or entity or for transfer of ownership to any private person or entity unless that taking is “authorized” by La. Const. art. VI, § 21.
La. Const. art. VI, § 21, entitled “Assistance to Local Industry,” begins with the word “Authorization.” It reads, in relevant part, as follows: .
A) Authorization. In order to (1) induce and encourage the location of or addition to industrial enterprises therein which would have economic impact upon the area and thereby the state, (2) provide for the establishment and furnishing of such industrial plant, (3) facilitate the operation of public ports, or (4) provide movable or immovable property, or both, for pollution control facilities, the legislature by law Rmay authorize, subject to restrictions it may impose, any political subdivision, public port commission, or public port, harbor, and terminal district to:
[[Image here]]
(b) acquire, through purchase, donation, exchange, and expropriation, and improve industrial plant buildings and industrial plant equipment, machinery, furnishings, and appurtenances, including public port facilities and operations which relate to or facilitate the transportation of goods in domestic and international commerce; and
*639 (c) sell, lease, lease-purchase, or demolish all or any part of the foregoing.
Together, La. Const, art. I, § 4(B)(1) and La. Const, art. VI, § 21 authorize the Legislature to allow public ports to exercise eminent domain powers that may include the taking of private property for use or transfer of ownership to another private entity, which but for La. Const, art. VI, § 21 would be prohibited.
However, both of these articles are subject to the business enterprise exception provided in La. Const. art. I, § 4(B)(6), which reads, in relevant part:
(6) No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise ....
Whereas La. Const. art. I, § 4(B)(1) specifically references La. Const. art. VI, § 21 as an exception, La. Const. art. I, § 4(B)(6) contains no exceptions. The majority, by finding that La. Const. art. VI, § 21 is an exception to La. Const. art. I, § 4(B)(6), treats (B)(6) as a subpart of (B)(1) rather than as the separate provision it clearly is. There is simply nothing in La. Const, art. VI, § 21 that abrogates or otherwise limits La. Const. art. I, § 4(B)(6). Given that (B)(6) is not a subpart of (B)(1), I am bound to consider the restrictions imposed by La. Const. art. I, § 4(B)(6) in determining whether the Port acted constitutionally in its taking of VDP’s property. I find it did not.
As acknowledged by the majority, “[t]he trial court was presented with evidence of the Port’s intention to maintain the current use of the Property initially....” In actuality, the record establishes that the Port planned to have Associated Terminals, another private entity, operate VDP’s facility as it was Loperated by VDP for eight to ten years in order to allow Associated Terminals to raise funds to expand the Property’s dry and liquid bulk cargo capacity. The taking of VDP’s business enterprise in order for the Port’s favored business, Associate Terminals, to use VDP’s Property to produce the same revenue VDP was previously generating is a clear violation of La. Const, art. I, § 4(B)(6). The taking of a business enterprise in order for government or its chosen beneficiaries to produce revenue is exactly the kind of violation of property rights La. Const, art. I, § 4(B)(6) exists to prevent. Should the majority’s interpretation stand, a public port convinced that it can make better use of a private business enterprise’s assets will be empowered to usurp that private business enterprise and fashion it into a revenue maker for government. One practical effect of that decision would be to stifle future port development by private businesses, who would be unwilling to take the risk that a public port could, at any time, take that private investment by expropriation.
The Port argues that La. Const, art. I, § 4(B)(6) is not violated because VDP’s business enterprise allegedly will not be operated by Associated Terminals in perpetuity. This argument fails to render the taking constitutional. Expropriation proceedings are in derogation of the right of individuals to own property, and as a result, the laws governing these proceedings must be strictly construed against the expropriating authority. Davis, 572 So.2d at 42. Interpreting La. Const. art. I, § 4(B)(6) strictly against the Port, because the expropriation plan involved operating VDP’s business to generate funds to finance a future dry and liquid bulk cargo facility, I must find that the Port seized VDP’s business enterprise for the purpose of operating VDP’s business enterprise.
Any interpretation of La. Const, art. VI, § 21 that grants public ports unfettered rights to expropriate private property ex *640 ceeds the authority that has been be-, stowed by the-Legislature and the citizenry of, this- .State, The Louisiana | .-.Constitution was carefully crafted to. balance the needs of public ports to facilitate the transport of goods or persons in domestic or international commerce with the right of Louisiana’s citizens,to be secure in their ownership of private property.- To undo this balance fr.om the bench is to. reach beyond the authority of a judge.[3]
For these reasons, I respectfully dissent-from the majority opinion.

. State, through the Dep't of Transp. and Dev. v. Estate of Davis, 572 So.2d 39, 42 (La. 1990).

. La. Const. art. I, § 4(B)(6).

. As explained in Hoag v. State, 2004-0857, p. 4 (La. 12/1/04), 889 So.2d 1019, 1022:
Our state constitution divides governmental power into separate legislative, executive and judicial branches and provides that no one branch shall exercise powers belonging to the others. La. Const., art, II, §§ 1, 2. This trichotomous branching of authority furnishes the basis for the existence of an inherent judicial power which the legislative and executive branches cannot abridge. Singer, Hutner, Levine, etc. v. LSBA, 378 So.2d 423 (La. 1979); Saucier v. Hayes Dairy Products, 373 So.2d 102, 109, 114 n. 3 (La. 1979). Likewise, the judicial branch is prohibited from infringing upon the inherent powers of the legislative and executive branches. LaBauve v. Louisiana Wildlife and Fisheries Comm'n, 289 So.2d 150, 151 (1974).