MADDOX v. INTERNATIONAL PAPER
CO. et al.

Civil Action No. 297.

District Court, W. D. Louisiana,
Shreveport Division.

Dec. 10, 1942.

A. S. Drew, of Minden, La., for plaintiff.

Madison, Madison & Files, of Bastrop, La., and Dan W. Stewart, Jr., of Minden, La., for defendant.

PORTERIE, District Judge.

At the conclusion of this case the court, giving reasons at the time, orally ruled on practically all general principles involved, deciding the main issues, and left for determination from the record and by help from the briefs the amount that the plaintiff was to be allowed as damages.

830

■ The court particularly refused to grant the injunction sought by the plaintiff because (a) the plaintiff has a full and adequate remedy at law and is not in need of recourse, for his complete protection, to the equitable writ of injunction, and (b) the court was impressed with the sincere, continued and costly effort of the defendant company to prevent the pollution of the waters of Bodcaw Bayou.

This oral ruling by the court on the refusal to grant the writ, definitely taken at the time, is now ratified as a part of this written opinion.

The court also asked counsel for plaintiff to compose his brief in the judicially declarative form, so as to relieve the court from the labor of a meticulous reading of the record; and this explains, if it does not pardon, the use in this opinion by the court of much of the sequence and the content of plaintiff's brief.

This suit was originally filed in the Twenty-Sixth Judicial District Court in the Parish of Bossier, and was removed to this court on motion of the defendant.

The petition of the plaintiff alleges certain damage to his fishing business caused by the pollution of Bodcaw Bayou in Bossier Parish, Louisiana; alleges further that the pollution was caused by the waste matter from the defendant's mill at Springhill, Louisiana, being dumped into the stream. The defendant is the operator of a large paper, pulp and board mill at Springhill, some thirty miles north of plaintiff's place of business.

This is a tort action, based on Article 2315 of the Civil Code of Louisiana.

■ The title to wild life, including animal, fish and fowl, is under control of the State, and is not susceptible of private ownership. Act 68 of 1932, Sec. 2; Pavel et al. v. Pattison, D.C., 24 F.Supp. 915; Alfred Oliver & Co. v. Board of Com'rs of Orleans Levee Dist., 169 La. 438, 125 So. 441. In this last case the petition of plaintiff disclosed no cause of action, as defendant was an agency of the State and "the state had the right to interfere with the exercise of this privilege [fishing], as for instance, as was the case here, in the exercise of its police power, to save a populous city from inundation, or for any other cause that it deemed sufficient." 125 So. at page 442.

■ It may be stated as a general rule that in tort actions a recovery may be had for loss of profits, provided their loss is the proximate result of defendant's wrong and they can be shown with reasonable certainty.

In commerce, profits mean the advance in the price of goods sold beyond the cost of purchase. In distinction from the wages of labor, they are understood to imply the net return to capital or stock employed, after deducting all the expenses, including not only the wages of those employed by the capitalist, but also of the capitalist himself for superintending the employment of his capital stock. Des Allemands Lumber Co. v. Morgan City Timber Co., 117 La. 1, 41 So. 332.

Loss of profits may be recovered as an element of damage both in cases sounding in tort and in cases predicated on a breach of contract, but the damage must be shown with some degree of legal certainty, and cannot be left to mere conjecture. Shreveport Laundries v. Red Iron Drilling Co., La.App., 192 So. 895; Tidwell v. Meyer Bros., 160 La. 778, 107 So. 571; Doriocourt v. Lacroix, 29 La.Ann. 286; Kelly & Son v. Yellow Cab Co., 5 La.App. 69; Horrell v. Gulf & Valley Cotton Oil Co., 16 La. App. 90, 133 So. 394.

The facts of this case preponderate in favor of the plaintiff, and are as follows:

The plaintiff, who was formerly a member of the Shreveport Fire Department, moved to his present location on Bodcaw Bayou in 1923, at which time he had no funds and borrowed sufficient money to start a fishing business at that location. As time went along his business progressed and increased; he bought numerous camp houses, picnic grounds, sheds and boat landings, built and constructed boats, purchased nets for commercial fishing, and erected a home. His business was renting boats, catching and selling commercial fish, renting camp houses, serving fish dinners. In short, he maintained and operated an up-to-date and clean commercial fishing camp and prospered in the business.

The plaintiff, from the years 1923 to 1939, solely out of his business, accumulated 320 acres of land, an automobile, a comfortable home, and maintained and educated his family. He was highly respected in his community, and his patrons were among the prominent people of the vicinity.

The undisputed detailed testimony by the plaintiff and by a number of other persons clearly shows that plaintiff's business for years, and particularly for the year 1939,

was yielding him the sum clear of three thousand dollars, at least, per year.

In 1938, the Southern Kraft Corporation, now International Paper Company, being one and the same concern, erected at Springhill, Louisiana, their large pulp and paper mill at a cost in excess of twelve million dollars; and, in the course of their operations, great amounts of waste water, containing the refuse from their operations, were impounded in large settling basins over some twelve to fourteen hundred acres of land. This waste contained acids and alkalis, together with the vegetable matter and cellulose material left from the operations.

These settling basins held and accounted for the waste material from early operations of the mill, but in the fall of 1939 the waste was released through flood gates and valves directly into Bodcaw Bayou. The result was that great quantities of fish were killed, the water turned an inky black, and fish life in the stream was destroyed. Consequently there was no more fishing in. Bodcaw Bayou, either for pleasure or for commerce.

From time to time, at irregular intervals in the years 1940, 1941 and 1942, these releases of waste material were repeated. The stream would remain devoid of fish life until high water came, at which time, new fish would come into the stream from Red River, Loggy Bayou, and the streams below; but the fishing at no time ever was as good as before the pollution.

It is unnecessary to determine the exact cause of the death of the fish, whether from the acid or alkali in the water or from the lack of oxygen because of the pollution, but the fact remains that the fish were killed by the releases of waste material from the mill.

■ We have no misgiving in saying that the cause of action of plaintiff is clearly within the broad principle of Article 2315 of the Civil Code of Louisiana: "Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it; * * *." No Louisiana cases have been cited with the exact factual background of the instant case in the briefs. Our examination has given us the case of McFarlain v. Jennings Heywood Oil Syndicate et al., 118 La. 537, 43 So. 155, which we think quite applicable here. 55 A.L.R. 1466. The cause of action was predicated upon Article 2315, and to the defense that "the injurious result is 'damnum absque injuria'" (43 So. at page 156), the plaintiff counters with Article 660 of the Code, relying upon this particular language (Par. 3): "The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome." The facts of the above case and the law to be applied make the case definitely decisive of the instant one and resolve it for the plaintiff. See White v. Edgerly Petroleum Co., 4 La. App. 20; 55 A.L.R. 1466.

■ That future profits from a business, reduced or destroyed by the act of another, are allowable and may be determined from the past profits of the business is provided for in Louisiana by Civil Code, Article 1934, subd. 3, par. 2: "In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."; and the following cases have so held: Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656; Hudson v. Louisiana Railway & Navigation Co., 4 La.App. 248; Pittman v. Bourgeois, La.App., 152 So. 765.

Though we see no need of persuasive authority, as the Louisiana decisions are quite to the point, we find that action for damages to one's business caused by the pollution of a stream has been recognized by courts of other jurisdictions, as follows: West Muncie Strawboard Co. v. Slack, 164 Ind. 21, 72 N.E. 879; Tutwiler Coal, Coke & Iron Co. v. Nichols, 145 Ala. 666, 146 Ala. 364, 39 So. 762, 119 Am.St.Rep. 34; Hodges v. Pine Product Co., 135 Ga. 134, 68 S.E. 1107, 33 L.R.A.,N.S., 74, 21 Ann. Cas. 1052.

The proof in the case is very consistent on the point that the plaintiff had a thriving, prosperous business before the pollution of the stream, and after the pollution of the stream he had no business left and his manner of making a living was taken from him; therefore, the only question remaining in the case is the amount of damage to which the plaintiff is entitled.

The plaintiff in this case was earning, above all expenses, the sum of three thousand dollars per year from his private and commercial fishing camp. In substantiation, the plaintiff named many of his cus-

tomers, gave the amounts of fish sold and the regularity of the sales, fixed the number of boats rented and the amounts received therefor, as well as the amounts received from the renting of his cabins for overnight fishing parties, itemized the serving of fish dinners to large gatherings. All of this clearly indicates that the business was remunerative, as he testified, and all of this was substantiated by the accumulation of property and material derived solely from this income, in addition to the expense of supporting his family.

All witnesses testified that his business was ruined. Even the officers of the defendant corporation admitted frankly that there was very little fishing at present, and for sometime past, on Bodcaw Bayou, that the fish were killed, that the blackening of the water was taken by the public to mean that there was no fishing in this stream during those times, and that the fish, if caught, were not fit for human consumption.

■ The preponderance of the evidence was that the cattle of plaintiff were not hurt or killed by the drinking of the polluted water, nor by the eating of grass that had been covered by this water. This claimed item of damage is therefore not allowed.

■ The plaintiff testified that at the present time his income from this business was in the neighborhood of twenty-five to fifty dollars per month and that he could not afford to operate his fishing camp for this small revenue, and that his boats and equipment were deteriorating to such an extent that they would shortly become worthless. Also, plaintiff, quite properly, applied himself to other work when he saw his fishing business dwindle, and so he went into a little neighborhood sawmill venture. We do not think the competition of other fishing places in the vicinity, notably on Lake Bisteneau and on Cross Lake, and perhaps at other places, would have affected the excellent and unsurpassed fishing on Bodcaw Bayou. We believe an award of $2,000 per year to be fair and proper, and to be fully sustained in the record to the certainty required by the law.

■ This suit was brought alleging a continuous offense, which was established and proved for the period of 1940–1942, both inclusive. The plaintiff sought damages for three years in his original suit. The defendant, in refutation, without reservation, offered proof from the period beginning October, 1939, to October, 1942, and as all courts discourage multiplicity of actions, the judgment herein is for a three-year period and in favor of the plaintiff and against the defendant in the amount of six thousand dollars; and this sum of damage is to carry legal interest for each year, as provided by law.

There has seldom been a case tried in which the proof was so unvarying and offered by such a variety of witnesses. All witnesses substantially agreed as to what was the extent and nature of the plaintiff's business. All agreed that from October, 1939, to and including the present time, his business has been practically ruined. The defendant's witnesses, some of whom were the employees of the defendant, were fair and honest, and frankly admitted the destruction of fish by the pollution of Bodcaw Bayou.

■ The proof is that the defendant company has spent great sums of money and has exercised great care in attempting to prevent this condition, but the fact remains undisputed that its efforts have not been successful. The defendant's good faith and labors prevent any penalty being placed on it, but do not constitute a defense to the award of damages to the plaintiff.

Judgment will be signed accordingly, upon presentation.