**Terry SHAUGHNESSY d/b/a Hackberry Rod & Gun Club**

v.

**PPG INDUSTRIES, INC.**

**Civ. A. No. 90–0384–LC.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

July 24, 1992.

**194**

William Edward Willard, Powers, Vaughn, Baton Rouge, La., for plaintiff.

Bernard H. McLaughlin, Jr., William Edward Shaddock, William B. Monk, Oliver P. Stockwell, H. Alan McCall, Stockwell, Sievert, Lake Charles, La., for defendant.

Andrew C. Wilson, Burke & Mayer, New Orleans, La., for amici.

---

NAUMAN S. SCOTT, District Judge.

### RULING

Before the court is the Motion for Summary Judgment brought by defendant PPG Industries, Inc. and opposed by plaintiff Terry Shaughnessy d/b/a Hackberry Rod & Gun Club.[1] For the reasons which follow, the motion is denied.

### *Jurisdiction*

We have jurisdiction by virtue of diversity of citizenship.

### *Facts*

This case arose following the contamination by PPG of several bodies of water in Calcasieu Parish, Louisiana, including the PPG Canal, Bayou D'Inde, the Calcasieu River, and related wetlands, estuaries, and marshes. This pollution,[2] which allegedly violated the Louisiana Environmental Quality Act, resulted in the issuance of advisories by the Department of Environmental Quality (DEQ) warning against fishing in the waters. Shaughnessy runs a fishing and hunting guide service in the areas affected by the pollution. This service runs eight boats and prior to the advisories served as many as 600 clients per month.

Following the advisories Shaughnessy filed this suit, alleging that his guide service bookings dropped significantly thereby causing significant economic harm. Shaughnessy contends that PPG's actions created liability under theories of nuisance, strict liability, and negligence under Louisiana Civil Code Article 2315. Shaughnessy also claims punitive damages. Shaughnessy's complaint does not invoke the admiralty jurisdiction of this court, nor has he made any indication that he intends to advance maritime theories of recovery.

Following the filing of the complaint, defendant PPG filed a motion to dismiss based on the precedent of *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927) contending

---

1. PPG's motion is also opposed by *amicus curiae* Oliver Hauk, Professor of Law, Tulane University School of Law.

2. PPG discharged Hexachlorobenzene and Hexachlorabutadiene.

that Shaughnessy's loss was *damnum absque injuria*. That motion was denied by Judge Hunter pending further discovery on the issue of whether Shaughnessy was a commercial fisherman, a class of litigants generally excepted from the physical injury requirement of *Robins Dry Dock*. Ruling Denying Motion to Dismiss (W.D.La. Nov. 11, 1990). Further discovery having been completed, we now face the issue of whether the rule of law of *Robins Dry Dock* applies to the present case, and if so, does Shaughnessy fall into one of the ever growing exceptions to the proprietary or physical injury requirement.

### Analysis

The 1927 Supreme Court decision in *Robins Dry Dock* established a "bright line test" for a limitation on foreseeability. In *Robins Dry Dock*, the respondent time chartered a vessel which, according to the charter party, was required to be dry-docked every six months for routine service. While being serviced the vessel's propeller was damaged by Robins Dry Dock which settled claims for physical damage and loss of use with the vessel owner. Suit was filed by the charterer, Flint, for loss of use of the vessel during the repair delay.

The Supreme Court held that no suit could be maintained. Flint was not a party to the ship repair contract and had not been proven to be a third party beneficiary and therefore could not proceed under contract theories. Most importantly for instant purposes, the Court recognized established English common law principles of law and held that since Flint had no property interest in the vessel he could not sue in tort.

The rule of *Robins Dry Dock* has been more warmly received in the Fifth Circuit than in others, and in 1985 was reaffirmed in *Louisiana ex rel Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir.1985). Much argument regarding that opinion has been made in the instant case and thus we feel compelled to briefly discuss the *M/V TESTBANK* decision. Following a catastrophic chemical spill resulting from a ves-

sel collision in the Mississippi river, various plaintiffs brought claims which were consolidated into one suit. Besides commercial fishermen of various types, recreational fishermen, seafood restaurants, bait and tackle shops, marina and boat rental operators and other non-fishing entities were included as claimants. Defendants moved for summary judgment, and the district court granted summary judgment against all claimants except commercial fishermen, which the court found deserving of special attention. *State of Louisiana ex rel. Guste v. M/V TESTBANK*, 524 F.Supp. 1170, 1173–74 (E.D.La.1981). The Fifth Circuit, sitting *en banc*, affirmed.[3]

Although the common law broadly prevented "purely" economic recovery in tort, the rule of *Robins Dry Dock* has been contained in this country primarily to torts in admiralty and in fact has been referred to as "the general rule in maritime law". *Dempster v. Louis Eymard Towing Co., Inc.*, 503 So.2d 99, 101 (La.App. 5 Cir.1987).

■ We recognize that at first glance, the rule might apply to the present suit. Under Louisiana law, fish are resources not personally owned until reduced to possession. Therefore, it would seem that Shaughnessy has not had property damage for which he can recover. However, closer consideration is demanded.

The present case involves a land based plaintiff, suing a land based polluter under state law. Shaughnessy has not raised any admiralty issues, and neither are we so inclined. The plaintiff's case may proceed under non-maritime theories, and should liability be proved, he will be able to receive damages which are provable with legal certainty for the loss of business he has suffered. *See e.g., Pruitt v. Allied Chemical Corp.*, 523 F.Supp. 975, 978 (E.D.Va. 1981).

Our action is not without precedent in this district. In *Maddox v. International Paper Co.*, 47 F.Supp. 829 (W.D.La.1942), fifteen years after the *Robins Dry Dock* decision, the Judge Porterie of the Western

---

**3.** The claims of the claims commercial fishermen which survived Summary Judgment in the

District Court were not before the Court of Appeals. 752 F.2d at 1021, n. 2.

District of Louisiana was faced with virtually identical facts. Maddox brought suit for an injunction and damages for loss of business to his sport fishing camp after the defendant's paper mill effluent polluted Bodcaw Bayou, killing the fish therein. The court stated in later proceedings that "[i]t is axiomatic that no one has a legal right to use a public stream for the purposes complained of herein." *Maddox v. International Paper Co.*, 105 F.Supp. 89, 91 (W.D.La.1951). The court held that it had "... no misgiving in saying that the cause of action of plaintiff is clearly within the broad principle of Article 2315 of the Civil Code of Louisiana: '[e]very act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it....'" We agree and therefore will allow plaintiff's case to proceed.

Our decision is bolstered by the fact that Shaughnessy does have physical impact, if not damage, from the accident. We note that as a riparian property owner, Shaughnessy has rights protected by Civil Code Article 656, which provides that "[t]he owner of the servient estate may not do anything to prevent the flow of water. The owner of the dominant estate may not do anything to render the servitude more burdensome."

Clearly the discharge of PPG's contaminants burdened Shaughnessy's servient estate. Economic damages to fishing businesses, combined with damage to a riparian estate have often been found to be actionable in various jurisdictions. *See Masonite Corp. v. Steede*, 198 Miss. 530, 23 So.2d 756 (1945); *Hampton v. North Carolina Pulp Co.*, 223 N.C. 535, 27 S.E.2d 538 (1943).

Our decision not to apply *Robins Dry Dock* has not affected the outcome of this motion. On the contrary, we believe that even under the rule of *Robins Dry Dock* Shaughnessy would still be entitled to recover under various exceptions to the economic recovery rule; exceptions which have been created to deal with the inequitable result the rule often mandates.

First, at least implicitly under the *TEST-BANK* case, commercial fishermen have a cause of action notwithstanding *Robins Dry Dock*. This was the approach alluded to by Judge Hunter's prior ruling on PPG's Motion to Dismiss, in which discovery was to go forward on the issue of whether Shaughnessy was a commercial fisherman. Commercial fishermen were permitted to recover for pollution induced losses in several leading cases, with slightly different rationales.

Notably, in *Burgess v. M/V TAMANO*, 370 F.Supp. 247 (E.D.Me.1973) following the allision of a an oil tanker and a rock outcropping, commercial fishermen were allowed to proceed on a public nuisance theory beyond several motions to dismiss. The district held that the commercial fishermen had a sufficiently special interest, apart from the public generally, to give their claim merit. Businesses which lost income due to the soiling of the local beaches were not allowed to recover as they did not directly exercise any public right, but rather were harmed as the public at large.

We read *M/V TAMANO* as not so much creating an exception to the pure economic damages rule, but rather as negating the rule's application. The fishermen who have specific damages based on the public nuisance, or nuisance *per se* under Louisiana law, are permitted to bring a suit normally within the public entity's exclusive right. Accordingly, the proprietary interest which is harmed is that belonging to the state, in this instance the marine life and waters of the state of Louisiana. Thus, we find the *Robins Dry Dock* rule should not apply to suits for public nuisance such as this. The traditional limitation on liability for nuisance suits, i.e., special or particular damages, is sufficient to prevent the limitless liability often threatened by those wielding *Robins Dry Dock*. We should also note that our holding is not precluded by the result obtained in *M/V TESTBANK*. That decision applied the property requirement to a maritime tort of public nuisance, the very existence of which was questionable. 752 F.2d at 1030, n. 13. As previously discussed the instant case is, in our view, decidedly land based for which the tort of nuisance exists.

Another rationale for permitting commercial fishermen to sue without physical damage exists. In *Union Oil Company v. Oppen,* 501 F.2d 558 (9th Cir.1974) an oil release caused damage to the California fishery and a group of commercial fishermen brought suit. In analyzing the district court's denial of the defendant's motion for summary judgment, which was based on a *Robins Dry Dock* theory, the court applied maritime law. Relying on an earlier ruling, the court equated the role of the fisherman with that of the seaman and granted "the fullest possible legal protection." 501 F.2d at 567. (*Quoting The Del Rio,* 209 F.2d 178, 182 (9th Cir.1953)). Because of the obviously harmful effect of any spillage on the fishery, the court found that the oil company owed a duty to manage the risk their activity created. This approach was endorsed by the lower court in *M/V TESTBANK* discussed *supra.*

The logic and holding of *Oppen* applies to the present case as well. Obviously, the harmful nature and need for vigilance exist with equal validity to PPG's manufacture of the toxic chemicals as to the defendant's extraction of oil in *Oppen.* Therefore, the burden must be shouldered by PPG to ensure the safety of its operations and the cleanliness of its emissions and effluent. Moreover, the relationship in which PPG shared the waters of Calcasieu Parish with Shaughnessy is as co-dependant as the relationship the commercial fishermen had with the oil producers in *Oppen.* Accordingly, a similar duty was owed PPG.

Lastly, we believe Shaughnessy is entitled to treatment as a commercial fishermen. As a fishing guide he is no less financially dependent on the condition of the sea than is a commercial fishermen. Further, he is no less exposed to the perils of the sea than a commercial fisherman who operates from a port. Finally, like a commercial fisherman, when the fish and game residing in the waters he plies perish, so does his business. This is distinguishable from the marina or bait and tackle vendors who, although undoubtedly harmed by pollution, retain potential customers. Thus, we find a greater foreseeability to exist from similar incidents for the injury to Shaughnessy and commercial fishermen than to the plaintiffs before the Fifth Circuit in *Testbank.* Accordingly, we believe Shaughnessy is entitled to an exception to the rule of *Robins Dry Dock* as were the commercial fishermen in *Oppen* and in *Testbank* at the District Court.

Accordingly, the Motion for Summary Judgment brought by PPG is hereby DENIED.