# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-1156

LOUISIANA CRAWFISH PRODUCERS
ASSOCIATION—WEST, et al.

VERSUS

AMERADA HESS CORPORATION, et al.

************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. MARTIN, NO. 04-68,091,
HONORABLE EDWARD M. LEONARD, JR., DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

Joseph R. Joy, III
Gordon J. Schoeffler
Joseph Joy & Associates
Post Office Box 4929
Lafayette, Louisiana  70502
(337) 232-8123
Counsel for Plaintiffs/Appellants:
        Louisiana Crawfish Producers Association—West, et al.

Leigh Haynie
Attorney at Law
1009 Kidder Road
Carencro, Louisiana  70520
(337) 886-9145
Counsel for Plaintiffs/Appellants:
        Louisiana Crawfish Producers Association—West, et al.

**Joseph E. LeBlanc, Jr.**
**A. Louise Blanchard**
**King, LeBlanc & Bland, P.L.L.C.**
**7500 San Felipe, Suite 800**
**Houston, Texas  77063**
**(713) 334-5644**
**Counsel for Defendant/Appellee:**
      **Amerada Hess Corporation**

**Elizabeth S. Wheeler**
**King, LeBlanc & Bland, P.L.L.C.**
**201 St. Charles Avenue, 45th Floor**
**New Orleans, Louisiana  70801**
**(225) 379-3330**
**Counsel for Defendant/Appellee:**
      **Amerada Hess Corporation**

**Stephen L. Williamson**
**John T. Nesser, IV**
**Charles M. Steen**
**Steen & Williamson, L.L.C.**
**Suite 1250 Energy Centre**
**1100 Poydras Street**
**New Orleans, Louisiana  70163-1250**
**(504) 599-8440**
**Counsel for Defendants/Appellees:**
      **Sorrento Pipeline Company**
      **Enterprise Products Company**

**Joel A. Levy**
**Levy & Levy**
**7577 Westbank Expressway**
**Marrero, Louisiana  70072**
**(504) 340-2993**
**Counsel for Defendant/Appellee:**
      **Saba Dredging Company, Inc.**

**Raymond M. Allen**
**Allen Law Office**
**Post Office Box 3204**
**Lafayette, Louisiana  70502**
**(318) 232-9918**
**Counsel for Defendant/Appellee:**
      **Berry Brothers General Contractors**

**Richard A. Cozad**
**Michael L. McAlpine**
**Emma A. Mekinda**
**McAlpine & Cozad**
**701 S. Peters Street, Suite 300**
**New Orleans, Louisiana  70130**
**(504) 561-0323**
**Counsel for Defendant/Appellee:**
      **Berry Brothers General Contractors**

**James M. Funderburk**
**Post Office Box 3017**
**Houma, Louisiana  70360**
**(985) 876-6410**
**Counsel for Defendant/Appellee:**
      **T. Baker Smith & Sons, Inc.**

**Burton P. Guidry**
**Assistant Attorney General**
**Post Office Box 94005, Cap. Station**
**Baton Rouge, Louisiana  70804-9005**
**(225) 326-6300**
**Counsel for Intervenor:**
      **State of Louisiana**

**Daniel G. Guidry**
**Attorney at Law**
**324 South Main Street**
**St. Martinville, Louisiana  70582**
**(337) 394-7116**
**Counsel for Defendants/Appellees:**
      **Furgo Chance, Inc.**
      **Sorrento Pipeline Company**
      **Enterprise Products Company**

**Albert M. Hand, Jr.**
**Cook, Yancey, King & Galloway**
**Post Office Box 22260**
**Shreveport, Louisiana  71120-2260**
**(318) 221-6277**
**Counsel for Defendant/Appellee:**
      **El Paso Field Services Management**

**Michael D. Hunt**
**Steven J. Levine**
**Phelps, Dunbar, LLC**
**Post Office Box 4412**
**Baton Rouge, Louisiana  70821-4412**
**(225) 346-0285**
**Counsel for Defendants/Appellees:**
      **C. L. Jack Stelly & Associates, Inc.**
      **Morris Hebert, Inc.**

**Francis X. Neuner, Jr.**
**Brandon W. Letulier**
**Laborde & Neuner**
**Post Office Box 52828**
**Lafayette, Louisiana  70505-2828**
**(337) 237-7000**
**Counsel for Defendant/Appellee:**
      **C. H. Fenstermaker & Associates**

**Kai David Midboe**
**Attorney at Law**
**214 Third Street, Suite 2B**
**Baton Rouge, Louisiana 70801-1304**
**(225) 291-7300**
**Counsel for Defendant/Appellee:**
        **Florida Gas Transmission Company**

**Andre J. Mouledoux**
**Jacques P. Degruy**
**Attorneys at Law**
**701 Poydras Street, Suite 4250**
**New Orleans, Louisiana 70130**
**(504) 595-3000**
**Counsel for Defendant/Appellee:**
        **C. F. Bean, L.L.C.**

**Jerry A. Oubre**
**Caffery, Oubre, Campbell & Garrison**
**Post Office Drawer 12410**
**New Iberia, Louisiana 70562-2410**
**(337) 364-1816**
**Counsel for Defendant/Appellee:**
        **El Paso Field Services Management**

**Edwin G. Preis, Jr.**
**Robert M. Kallam**
**Casie L. Willis**
**Preis, Kraft & Roy**
**Post Office Drawer 94-C**
**Lafayette, Louisiana 70509**
**(337) 237-6062**
**Counsel for Defendant/Appellee:**
        **C & C Technologies**

**Clement Story, III**
**Louisiana Department of Justice**
**1885 N. Third Street, 7th Floor**
**Baton Rouge, Louisiana 70802**
**(225) 326-6705**
**Counsel for Intervenor:**
        **State of Louisiana**

**Roger E. Ishee**
**Greg R. Mier**
**Onebane Law Firm**
**Post Office Box 3507**
**Lafayette, Louisiana 70502-3507**
**(337) 237-2660**
**Counsel for Defendant/Appellee:**
        **Denbury Resources, Inc.**

Joe B. Norman
Stevia Marie Walther
Kelly B. Becker
Attorneys at Law
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
(504) 581-7979
Counsel for Defendants/Appellees:
     Texaco Petroleum Pipeline, LLC
     Texaco Pipelines, LLC

Lawrence P. Simon
Jamie D. Rhymes
Jason P. Bergeron
Liskow & Lewis
Post Office Box 52008
Lafayette, Louisiana 70505-2008
(318) 232-7424
Counsel for Defendant/Appellee:
     Hunt Oil Company

SULLIVAN, Judge.

At issue in this appeal is whether Plaintiffs, who identify themselves as commercial crawfishermen, have a state law cause of action arising out of the alleged destruction of the "Buffalo Cove" fishing area in St. Martin Parish, Louisiana, due to Defendants' oilfield-related activities. The trial court dismissed Plaintiffs' state law claims on an exception of no cause of action, but reserved their right to proceed under maritime law. For the following reasons, we affirm.

## Discussion of the Record

The Louisiana Crawfish Producers Association–West and over ninety of its individual members sued eighteen named Defendants who were allegedly engaged in oil and gas exploration, dredging and pipeline activities, or providing surveying services for those conducting such activities. Plaintiffs alleged that in the course of these activities Defendants created spoil banks and dams that have impeded the natural flow of water in the Buffalo Cove area, resulting in stagnant water that has destroyed the aquatic ecosystem and has eliminated or greatly diminished their ability to catch crawfish in the area.[1] Plaintiffs initially filed suit under state law, specifically citing La.Civ.Code art. 667, then filed an amending petition seeking relief under both state tort law and general maritime law. They sought damages for loss of jobs, profits, wages, and earning capacity; loss of enjoyment of recreational use; and inconvenience and mental distress.

After hearing numerous exceptions filed by Defendants, the trial court found that Plaintiffs did not have a cause of action under state law, based primarily on their inability to demonstrate a proprietary interest in either the land of Buffalo Cove or the wild crawfish that they sought to catch. The trial court considered that its ruling

---

[1]In their appellate brief, Plaintiffs identify the Buffalo Cove area as comprising 58,000 acres within the 595,000 acres of the Atchafalaya Basin.

rendered any other exceptions moot, but it reserved to Plaintiffs the right to proceed with any claims that they may have under maritime law.[2] On appeal, Plaintiffs argue that the trial court erred in concluding that they did not have a cause of action under La.Civ.Code art. 2315 and La.Civ.Code art. 667.

## Opinion

In *Harp v. Pine Bluff Sand & Gravel Co.*, 98-1634, p. 4 (La.App. 3 Cir. 11/24/99), 750 So.2d 226, 229 (citations omitted), this court explained the function of the exception of no cause of action as follows:

> The function of an Exception of No Cause of Action is to test the legal sufficiency of a petition by determining whether the law affords a remedy on the facts alleged in the pleading. Any doubts must be resolved in favor of the sufficiency of the petition.
>
> No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. When a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be denied. A "cause of action" is an act by a Defendant which gives a Plaintiff a right to invoke a judicial interference on his behalf.

"In reviewing a trial court's ruling sustaining an exception of no cause of action, we conduct a *de novo* review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition." *Schoeffler v. Drake Hunting Club*, 05-499, p. 5 (La.App. 3 Cir. 1/4/06), 919 So.2d 822, 828.

The trial court's dismissal of Plaintiffs' state law claims is based upon the rule of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134 (1927), which, broadly stated, operates to deny a plaintiff recovery for economic loss resulting from physical damage to property in which he has no proprietary interest. Although

---

[2]The trial court also denied an exception of improper cumulation of actions that is not at issue in this appeal.

2

*Robins* arose in a contractual setting, in that the charterer of a vessel was denied recovery for its loss of use after the vessel was negligently damaged by the dry dock operator, its application has not been confined to contract cases, but rather it has become "a pragmatic limitation imposed by the Court upon the tort doctrine of foreseeability." *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1023 (5th Cir. 1985), *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271 (1986).

In this appeal, plaintiffs argue that they fall within the exception to *Robins* afforded to commercial fishermen, as recognized in the federal district court ruling of *Louisiana ex rel. Guste v. M/V TESTBANK*, 524 F.Supp. 1170 (E.D. La. 1981), and in *Union Oil Co. v. Oppen*, 501 F.2d 558 (9th Cir. 1974). Plaintiffs also rely upon two other federal district court cases in which, they contend, other similarly-situated claimants have recovered economic damages under state tort law. *See Shaughnessy v. PPG Indus., Inc.*, 795 F.Supp. 193 (W.D. La. 1992), and *Maddox v. Int'l Paper Co.*, 47 F.Supp. 829 (W.D. La. 1942). Defendants respond that *Shaughnessy* and *Maddox* are distinguishable, in that those plaintiffs were riparian landowners as well, and that the one Louisiana state court case to address this issue, *Dempster v. Louis Eymard Towing Co., Inc.*, 503 So.2d 99 (La.App. 5 Cir.), *writ denied*, 505 So.2d 1136 (La.1987), held that fishermen did not have a cause of action for economic loss arising from the destruction of a fishing site. After reviewing the above jurisprudence, and the many other cases cited by both sides to this controversy, we find Defendants' arguments to be persuasive.

In *TESTBANK*, 524 F.Supp. at 1173, the federal district court recognized that claims for economic loss of commercial fishermen deserve special attention, as "[t]raditionally, seamen have been recognized as favored in admiralty and their

3

economic interests require the fullest possible legal protection." Accordingly, the district court refused to dismiss the economic claims of commercial fishermen "even in the absence of any proprietary rights over aquatic life." *Id.* We note that the facts of *TESTBANK* occurred in a purely maritime setting, as the damage to the commercial fishing industry was caused by the collision of two vessels on a navigable waterway. Also, the commercial fishermen in *TESTBANK* and in *Oppen*, 501 F.2d 558, appear to be "Jones Act" seamen, subject to the "perils of the sea," which is not the case here. Similarly, Plaintiffs reliance on *Poe v. PPG Industries*, 00-1141 (La.App. 3 Cir. 3/28/01), 782 So.2d 1168, *writ denied*, 01-1239 (La. 6/22/01), 794 So.2d 801, is misplaced, as this court clearly stated that it was applying maritime law in that case.

In *Shaughnessy*, 795 F.Supp. 193, the owner of a fishing and hunting guide service filed suit when his bookings dropped significantly after the defendant, described by the court as a "land based polluter," allegedly contaminated the waters in which his clients fished. *Id*. at 195. Although the court also concluded that the plaintiff should be protected in the same manner as the commercial fisherman in *TESTBANK*, 524 F.Supp. 1170, central to its analysis in permitting the suit to survive summary judgment *under state law* was the plaintiff's status as a riparian landowner. In addition to applying La.Civ.Code art. 2315, the court concluded that the plaintiff could recover under La.Civ.Code art. 656 as the owner of a servient estate whose servitude has become more burdensome through the actions of the owner of the dominant estate. That the plaintiff was a landowner led the court to observe: "Economic damages to fishing businesses, *combined with damage to a riparian estate* have often been found to be actionable in various jurisdictions." *Shaughnessy*, 795 F.Supp. at 196 (emphasis added). As authority for allowing the case to proceed under

4

La.Civ.Code art. 2315, the court cited *Maddox*, 47 F.Supp. 829, a case in which the plaintiff was also a riparian landowner.[3]

In *Dempster*, 503 So.2d 99, the court was presented with plaintiffs whose positions are more analogous to those in the case *sub judice*. In that case, two fishermen filed suit for the loss of a fishing site, seeking to recover for the loss of their nets, the loss of the catch in the nets, and the loss of future profits from the use of the fishing site. The fifth circuit affirmed summary judgment dismissing plaintiffs' economic damage claims based upon the same rationale applied by the trial court in the present case: "[a]s plaintiff had no proprietary interest in the fish which were at large in the waters, and no right to object to the state's interfering with the exercise of the fishing privilege granted, it has no right to complain *and claim damages*." *Id.* at 101 (quoting *Vanacor v. Dep't of Wildlife & Fisheries*, 483 So.2d 1127, 1130 (La.App. 5 Cir. 1986) (emphasis added) (alteration in original)). The court also addressed one of Plaintiffs' arguments herein, namely that regulatory cases such as *Vanacor* cannot be applied to defeat their tort claims, by stating:

> Although *Vanacor, supra* dealt with the ability of the state to regulate fishing, we also find it applicable to the instant case *which concerns the rights of a tortfeasor to recover damages for the future loss of fish insofar as holding that the appellants have no proprietary interest in the fish at large in the state waters.*

*Dempster*, 503 So.2d at 101 (emphasis added). Additionally, we note that the supreme court reiterated the above principle in *Louisiana Seafood Management Council v. Louisiana Wildlife & Fisheries Commission*, 97-1367, p. 8 (La. 5/19/98), 715 So.2d 387, 392, in finding that licensed commercial fishermen had no cause of

---

[3]As shown in a later proceeding, *Maddox v. International Paper Co.*, 105 F.Supp. 89 (W.D. La..1951), *aff'd*, 203 F.2d 88 (5th Cir. 1953), the plaintiff was allowed to recover for the total destruction of his fishing camp, the loss of improvements placed on his property, and the loss of the probable sale of two campsites.

action under the "taking clause" of the United States Constitution as to the loss of fishing profits brought about by the state's regulatory actions:

> The lack of any property interest in the fish in the waters is well-settled, statutorily and judicially. See La.Civ.Code arts. 450, 452; La.Rev.Stat. 56:3. In *LaBauve v. Louisiana Wildlife & Fisheries Comm'n*, 444 F.Supp. 1370 (E.D.La.1978), the court explained that "fish which are at large in state waters are the property of the state, as public or common things;" that "an individual has no proprietary interest in the fish he is prevented from catching;" and that "an individual has no proprietary right to fish commercially in state waters." 444 F.Supp. at 1378. Fishermen's inability to establish a private property interest in free-swimming corporeal fish has precluded recovery under this theory. Douglas F. Britton, *The Privatization of the American Fishery: Limitations, Recognitions, and the Public Trust*, 3 Ocean & Coastal L.J. 217, 236 (1997) (noting that under these circumstances fishermen have been regarded as "possessing no compensable, or prosecutable, property interests" for takings claims purposes).

Plaintiffs also contend that they have a cause of action under La.Civ.Code art. 667,[4] arguing that their fishing licenses place them in the category of "persons holding rights derived from the landowner," as were the successful oyster lessees in *Inabnet v. Exxon Corp.*, 93-681, p. 12 (La. 9/6/94), 642 So.2d 1243, 1251. We disagree. As explained in *Louisiana Seafood Management Council*, 715 So.2d at 392 (emphasis added), a commercial fishing license is "a state-granted privilege subject

---

[4]Louisiana Civil Code Article 667 (emphasis added) provides:

> *Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.* However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

to such limitations as *the state may impose in the exercise of its police power*." Thus, a fishing license is issued by the state in the exercise of its regulatory and police powers, as opposed to its capacity to lease a specific area of land as a landowner. Further, as the court explained in *Dumas v. Angus Chemical Co.*, 31,400, p. 16 (La.App. 2 Cir. 1/11/99), 728 So.2d 441, 451, *writ denied*, 99-751 (La. 4/30/99), 741 So.2d 19:

> [N]ot every claimant is within the class of people to whom a duty is owed under Article 667. The term "proprietor" in Article 667 has been interpreted to apply not only to a landowner, but also to any person whose rights derive from the owner. *Inabnet v. Exxon Corp.*, 93-0681 (La.9/6/94), 642 So.2d 1243. A landowner, however, does not owe a duty under Article 667 to everyone: "Persons that do not qualify as proprietors, such as guests, contractors, and members of the public, may have a variety of remedies against a landowner under the law of delictual obligations . . ., but not for violation of obligations established by Articles 667 and 668." [A. N.] Yiannopoulos, [4 *Civil Law Treatise* (1997) Predial Servitudes], § 44.

Based upon the above, we find that the trial court properly granted Defendants' exception of no cause of action as to Plaintiffs' state law claims. Accordingly, the judgment of the trial court is affirmed at Plaintiffs' cost.

**AFFIRMED.**