MAW ENTERPRISES L.L.C. ET AL.

VERSUS

CITY OF MARKSVILLE, ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2010-5073-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.

Peters, J., dissents and assigns reasons.

AFFIRMED AS AMENDED.

Rodney M. Rabalais
P. O. Box 447
Marksville, LA 71351
(318) 253-4622
COUNSEL FOR PLAINTIFF-APPELLEE:
    Couvillon Payless, Inc.

Derrick M. Whittington
Whittington Law Firm
P. O. Box 127
Marksville, LA 71351
(318) 253-5852
COUNSEL FOR DEFENDANT-APPELLANT:
    City of Marksville

**PICKETT, Judge.**

The City of Marksville appeals the judgment awarding the plaintiff damages caused by the City's wrongful denial of a license to sell alcohol to the plaintiff's lessee. As discussed below, we amend the judgment to increase the award of court costs and affirm as amended.

## DISCUSSION

In November 2009, MAW Enterprises, L.L.C. (MAW) entered into a lease with Couvillon Payless Inc. (Couvillon), a family-owned business entity that owns property in Marksville. A convenience store on the property has been operated by various parties without interruption since 1978. A liquor license had been issued to the premises continuously from 1978 through December 2009. Pursuant to the terms of the lease: no rent was due the first three months; the next three months, the rent was $.05 per gallon of the gas sold; and thereafter, the rent increased to $4,000 per month.

MAW began operations in December 2009. The City granted MAW an occupational license, and it began operating the convenience store. In January 2010, MAW submitted an application to obtain a liquor license that the City denied. Couvillon agreed not to demand rent from MAW until MAW obtained a liquor license.

MAW and Couvillon sued the City of Marksville in April 2010, seeking a mandamus ordering the City to grant MAW a liquor license or, alternatively, a declaratory judgment declaring the City's ordinance to be without effect, together with damages and attorney fees. In June 2010, the City granted a liquor license to MAW. After its liquor license was issued, MAW dismissed with prejudice its claims against the City and began paying Couvillon rent in July 2010. The City

filed peremptory exceptions of no cause of action and no right of action as to Couvillon's claims.

A hearing on the exceptions was held, and the trial court denied both exceptions. The trial court immediately proceeded to trial on the merits of Couvillon's claims. At the conclusion of the trial, the trial court took the matter under advisement and allowed the parties to submit post-trial memoranda. Thereafter, the trial court issued Reasons for Ruling in which it concluded that the City's denial of a liquor license to MAW was unjustified. The trial court determined that MAW terminated its lease with Couvillon due to the City's unjustified denial of a liquor license and that Couvillon proved it suffered damages as a result of the City's wrongful action in the amount of $72,000 for lost rentals, less $15,000 in rent paid by MAW. It also awarded Couvillon $7,500 in attorney fees. A judgment against the City awarding damages and attorney fees in these amounts was signed.

The City appealed and assigned the following three errors with respect to the trial court's judgment:

1.    The trial court erred in holding the City of Marksville liable to Couvillon for damages because Couvillon's claims arise from a contract to which the City was not a party.

2.    The trial court's calculation of damages was erroneous.

3.    The trial court erred in failing to consider the comparative fault of Couvillon and MAW.

### DISCUSSION

*Couvillon's Right to Recover Damages*

The City urges that Couvillon has no cause of action against it for the relief awarded by the trial court.

> The function of an Exception of No Cause of Action is to test the legal sufficiency of a petition by determining whether the law affords a remedy on the facts alleged in the pleading. Any doubts must be resolved in favor of the sufficiency of the petition.
>
> No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. When a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be denied. A "cause of action" is an act by a Defendant which gives a Plaintiff a right to invoke a judicial interference on his behalf.

*La. Crawfish Producers Ass'n-West v. Amerada Hess Corp.,* 05-1156, p. 2 (La.App. 3 Cir. 7/12/06), 935 So.2d 380, 382, *writ denied*, 06-2301 (La. 12/8/06), 943 So.2d 1094 (quoting *Harp v. Pine Bluff Sand & Gravel Co.*, 98-1634, p. 4 (La.App. 3 Cir. 11/24/99), 750 So.2d 226, 229 (citations omitted)).

The City asserts that because Couvillon was not a party to the contract between it and MAW, Couvillon has no cause of action for the damages it seeks. It argues that MAW, not Couvillon, has the right to collect the damages Couvillon seeks and that Couvillon's cause of action is against MAW not it. Pointing to *Louisiana Crawfish*, 935 So.2d 380, *PPG Industries, Inc. v. Bean Dredging,* 447 So.2d 1058 (La.1984), and *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134 (1927) as support, the City urges that a contractual relationship such as the lease agreement between Couvillon and MAW does not support the recovery of damages by a party who was not directly injured by the tortfeasor.

In *PPG*, 447 So.2d 1058, the supreme court denied recovery to the customer of a natural gas pipeline owner whose gas supply was interrupted when the pipeline was damaged by the defendant's dredging operation. The court utilized the duty-risk analysis and concluded that the ease of association between the rule of law not to negligently damage the property of another was not present with

regard to the pipeline's customer whose only interest in the damaged pipeline arose from its contract with the owner.

Couvillon contends, however, that the City's refusal to issue MAW a liquor license constituted "a wrongful taking of an existing right" it owned and that the wrongful taking deprived it of the benefits of an ongoing business. Specifically, Couvillon argues that the City's ordinance was preempted by state law because it conflicted with an applicable state statute.

Louisiana Revised Statutes 26:81 governs the issuance of permits to sell alcoholic beverages with regard to the location of businesses selling such beverages. Section 81 (emphasis added) provides, in pertinent part:

> A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
>
> . . . .
>
> C. (1) When prohibited by municipal or parish ordinance, no permit shall be granted for *any premises* situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church or synagogue, public library, school, full-time day care center as defined in R.S. 17:405(A)(4) . . . .
>
> . . . .
>
> E. The prohibitions in this Section do not apply . . . to *any premises* which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance.

Section 11-19.1 of the City's Code of Ordinances, adopted on August 25, 1980, restricts the issuance of permits "to those *persons* licensed by the Town of Marksville to deal in beverages of low alcoholic content continuously and without interruption from August, 1978 or before, until the time of each successive renewal, and only for the particular premises which those persons have so licensed." The state statute exempts *the premises* for which the liquor license is

sought, not the person as the City ordinance does; therefore, the ordinance conflicts with the state law. A municipal ordinance that conflicts with state law is preempted by the state law. *Sabine Parish Police Jury v. Comm'r of Alcohol & Tobacco Control*, 04-1833 (La. 4/12/05), 898 So.2d 1244.

The City does not dispute that its ordinance conflicts with La.R.S. 26:81 and that it wrongfully denied MAW a liquor license based on its ordinance. Couvillon owns the premises leased by MAW for which the City denied a liquor license and was damaged by the City's wrongful action. Accordingly, Couvillon stands in the position of the property owners in *Louisiana Crawfish*, 935 So.2d 380, *PPG Industries,* 447 So.2d 1058, and *Robins*, 275 U.S. 303, 48 S.Ct. 134, not the parties to whom recovery was denied. Accordingly, the exception of no cause of action was properly denied.

*Damages*

The City complains that the trial court's award of damages exceeds the loss proven by Couvillon. Specifically, it contends that the damages proven do not exceed a period of approximately six months.

Mr. Couvillon testified that rental for tenants prior to MAW, except the immediately preceding tenant, had been based on gas sales and averaged approximately $4,000 or more per month. He then explained that the tenant immediately preceding MAW had paid $4,000 per month in rent. Records of gas sales for the years 2007-09 corroborate this testimony.

Mr. Couvillon also testified that after the City denied MAW a liquor license, Couvillon orally amended its lease with MAW to waive rent on a month-by-month basis until MAW obtained a liquor license and that rentals were to increase to $4,000 per month thereafter. Mr. Couvillon further related that while MAW's

5

sales increased after its liquor license was issued, those sales were not sufficient to sustain rent of $4,000 per month. Instead, MAW paid Couvillon rent totaling $15,000 for the months of July through December 2010. William Brittain, corporate representative of MAW, explained that MAW paid rentals of $2,000 for the month of July, $3,000 per month for August through November, and it left gas in the tank as rent for December 2010 when it left the premises.

Mr. Couvillon testified that a new tenant leased the premises a few weeks after its lease with MAW was terminated and that the convenience store was closed during that time. Mr. Couvillon also testified that Couvillon did not charge the new tenant rent for six months, indicating this was done to allow sales to return to a level that was profitable for the tenant. According to Mr. Couvillon, the convenience store's gas sales "went [d]own the tube" when MAW was denied a liquor license and never improved to the level of sales before MAW's lease. The City did not present any evidence contradicting either Mr. Couvillon's or Mr. Brittain's testimony.

An appellate court's award of damages is a finding of fact. *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065. An appellate court cannot reverse a trial court's finding of fact unless review of the entire record shows that a reasonable factual basis does not exist for the finding and that the fact finder was clearly wrong or manifestly erroneous. *Id.* When credibility of a witness's testimony is the basis of the factual finding, a fact finder's decision to accept the unchallenged testimony of a witness can virtually never be manifestly erroneous. *Adams v. Rhodia, Inc.*, 07-2110 (La. 5/21/08), 983 So.2d 798.

6

As outlined above, the evidence establishes a reasonable factual basis exists in the record for the trial court's damage awards. Accordingly, we find no error in the trial court's damage award.

*Comparative Fault*

The City contends that Couvillon should be assessed with some percentage of fault because it did not apply for a liquor license after the City denied MAW a liquor license. Review of *Darnell v. Taylor*, 236 So.2d 57 (La.App. 3 Cir.), *writ denied*, 239 So.2d 346, 256 La. 821 (1970), the case cited by the City as support for this proposition, shows the error of this argument. The plaintiff in *Darnell* could have, but failed, to minimize the damage he suffered after a leak developed in a gas tank due to a defect in the tank because he did not properly monitor the contents of the tank. Hence, the issue in *Darnell* was not comparative fault but mitigation of damages.

The obligation of a party like Couvillon to mitigate its damages is provided for in La.Civ.Code art. 2002. Article 2002 requires "[a]n obligee [to] make reasonable efforts to mitigate the damage caused by the obligor's failure to perform." If the obligee fails to take reasonable steps to mitigate its damages, the obligor may seek to have the obligee's damages reduced.

Mitigation of damages is an affirmative defense. *MB Indus., LLC v. CNA Ins. Co.*, 11-303, 11-304 (La. 10/25/11), 74 So.3d 1173. Affirmative defenses are waived if not specifically plead. La.Code Civ.P. art. 1005. The City did not affirmatively plead mitigation of damages when it answered Couvillon's petition; therefore, the defense was waived.

## DISPOSITION

Finding no error in the trial court's denial of the exception of no cause of action and awards of damages and attorney fees, we amend the judgment to increase the award of court costs to $1,463.54 and affirm as amended.

**AFFIRMED AS AMENDED.**

MAW ENTERPRISES L.L.C., ET AL.

VERSUS

CITY OF MARKSVILLE, ET AL.

**PETERS, J. dissents.**

I respectfully disagree with the majority's determination that La.R.S. 26:81 affords Couvillon Payless, Inc. (Couvillon) a cause of action against the City of Marksville (Marksville) for damages it sustained when MAW Enterprises, L.L.C. (MAW) did not perform according to their lease agreement after Marksville denied MAW a liquor license for the convenience store premises. The majority reaches this conclusion based on the word "premises" rather than "person" in La.R.S. 26:81. Because Couvillon owns the premises leased to MAW, the majority reasons, it has a cause of action for damages against Marksville despite the total lack of a contractual relationship. I find that the emphasis on the statute, without taking into consideration the other provisions concerning the grant of a liquor license, is error. I would reverse the trial court judgment finding that Couvillon does not have a cause of action against Marksville.

The Louisiana Alcohol Beverage Control Law, La.R.S. 26:1 et seq., clearly provides that the person wishing to sell alcoholic beverages on a particular premises is the party at interest in the granting or denying of a permit. Louisiana Revised Statutes 26:71 provides in pertinent part that "before engaging in the

business of manufacturing, supplying, or dealing in alcoholic beverages, *all persons* shall obtain from the commissioner . . . a permit to conduct each separate business . . ." (Emphasis added.) A list of the fees to be collected for the issuance of a particular license follows this language in the statutes and this list makes it clear that the applicant must pay a separate fee for the operation of each separate business location. *Id.*

With regard to the issuance of local permits, La.R.S. 26:74 does not refer to the premises associated with the sale of alcoholic beverages, but instead provides that "[p]arishes and municipalities may require annual permits and fees from *dealers* holding state permits under this Chapter." (Emphasis added.) Louisiana Revised Statutes 26:2(5) defines a "dealer" in part as "any person who, as a business . . . sells [or] offers for sale . . . any alcoholic beverage in the state or engages herein in any business transaction relating to any such beverage." In keeping with the personal nature of the required permits, La.R.S. 26:75(A) provides in pertinent part that "[n]o *person* shall do any act for which a permit is required by this Chapter or by local authorities acting hereunder unless he holds the proper state and local permit." (Emphasis added.)

Louisiana Revised Statutes 26:76 also carries forward the personal nature of the permit to sell alcoholic beverages. It provides that the permit is not assignable or heritable, and that it must be surrendered if the "ownership of the business is transferred or the business is terminated." La.R.S. 26:76(A)(2). Of importance to the resolution of the issue in this case is La.R.S. 26:76(A)(4) which provides:

> When the location of a place of business is proposed to be changed, the proposal shall be received and must be approved by the issuing authority before such action is taken. The change of location shall be noted on the permit by the issuing authority and the permit shall be invalid unless the notation is made.

Furthermore, the statutory scheme provides that the applicant for a liquor license permit must be the party proposing to engage in the business or operation itself. La.R.S. 26:77-80.

I acknowledge that La.R.S. 26:81(B)(3), (C)(1), (C)(2), and (E) all refer to the "premises" as having been licensed. However, the title of this statute explains the change in nomenclature for use in this particular instance. The statute's title, "**Location of business limited,**" does not refer to the licensing process, but addresses the location of the business itself. That is to say, it merely sets forth the limitations on where the liquor license may be exercised. I find nothing in the language of La.R.S. 26:81 that suggests this single statue changes the particulars of the remainder of the Chapter.

I would reverse the trial court's judgment by granting Marksville's peremptory exception of no cause of action and dismiss the claims of Couvillon Payless Inc. at its costs.

3